IN THE UNITED STATES DISTRICT COURT
**FOR THE SOUTHERN DISTRICT OF TEXAS**

United States Courts
Southern District of Texas
F I L E D

MAY 0 1 2023

Nathan Ochsner, Clerk of Court

| | |
|---|---|
| **KRISTOPHER D. CARTER,** : | |
| **PLAINTIFF,** : | |
| **VS.** : **CASE NO:** | |
| **HARRIS COUNTY SHERIFF'S** : | |
| **DEPARTMENT, JAMIE MICHELE** : **COMPLAINT AT LAW AND IN EQUITY** | |
| **BURRO (IN THEIR INDIVIDUAL AND** : | |
| **OFFICIAL CAPACITY), SHAMANDA** : **JURY TRIAL DEMANDED** | |
| **HARRIS (IN THEIR INDIVIDUAL AND** | |
| **OFFICIAL CAPACITY), KOHISHA** | |
| **BLAYLOCK,** : | |
| **DEFENDANTS.** : | |

## COMPLAINT AT LAW AND IN EQUITY

AND NOW, comes the Plaintiff, Kristopher D. Carter, by and through himself, to file this instant complaint and in support thereof avers as follows:

1. The Plaintiff hereby initiates the instant action against the Defendants by way of 42 U.S.C. § 1983 as well as other relevant torts and claims arising out of the false and unjustified arrest of the Plaintiff as well as other violation of rights thereby giving rise to the instant action.

2. As a direct and proximate result of the misconduct of the Defendants individually and collectively described herein, Plaintiff suffered economic and non-economic damages in an amount to be fully determined in a trial by jury.

3. The Plaintiff is seeking compensatory and punitive damages against each of the Defendants named in the instant matter individually and collectively in an amount to be determined in a trial by jury as well as any and all other Relief deemed necessary and applicable.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over federal questions pursuant to 28 U.S.C. §§ 1331, 1343 and 42 U.S.C. §§ 1983, 1988.

5. Venue is proper in this Court under 28 U.S.C. § 1391 (b) because all incidents, events, and occurrences giving rise to this action occurred in this County of Harris.

Moreover, upon information and belief, all of the parties reside in this Judicial Districts.

## PARTIES

6. This Complainant Kristopher Donte Carter resides in Harris County, Texas. This Complainant at all times material hereto a citizen of the United States and the state of Texas.

7. This Complainant was prior to these civil rights violations acted upon was employed by the Houston Independent School District Police Department as a duly appointed and Sworn Police Officer, and was acting in his individual capacity and/or under color of state law, and within this scope of his employment.

8. This Complainant at all times maintains his innocence despite enduring defamatory and (life-altering) employment-terminating willful and wanton action(s) whereas acted upon.

9. This Harris County Sheriff's Department (HCSO) is and was at all times material hereto a Harris County agency, providing this vehicle in which this county fulfills its policing functions.

10. Upon information and beliefs, Defendant Burro is and was at all times material hereto a citizen of the United States and the state of Texas.

11. Defendant Burro was at all times was employed by this Harris County District Attorney's Office as a duly appointed and sworn assistant district attorney, and was acting in this individual capacity and/or under color of state law, and within this scope of this employment.

12. Upon information and beliefs, Defendant Shamanda Harris is and was all time material hereto a citizen of the United States and the state of Texas.

13. Defendant Harris was at all times was employed by this Harris County Sheriff's

Office as a duly appointed and sworn deputy, and was acting in this individual capacity and/or

under color of state law, and within this scope of this employment.

14. Upon information and beliefs, Defendant Kohisha Blaylock is and was all time material

hereto a citizen of the United States and the state of Texas. Defendant Blaylock is also this

respondent of this 309th Judicial District of Harris County, Texas. (Case number:

2021-14248) civil court proceedings.

## STATEMENT OF FACTS

### A. Deprivation of Rights

15. On or about March 2, 2021, this complainant, Police Officer Kristopher D. Carter, appeared

at Kohisha Blaylock's residence in effort of conducting this routine visitations of this minor (by

this initials of "S.C") that both, this complainant and Blaylock mutually share.

16. This address of this location is at 1550 Westborough Drive Apartment 7306, Katy,

Texas 77449. This age of this minor was 13 years of old during this time. (Date of Birth: 06-

08-2007)

17. This complainant acknowledges that, both, this complainant and Blaylock shared this

following family court appointed mediated-custodianship(s) contracts from this following

Uniform Child Custody and Enforcement Act. See Texas Family Code 152.102(4).

[State of Wisconsin Circuit Court for Dane County (Case number: 2007FA1593)][309th

Judicial District of Harris County, Texas. (Case number: 2021-14248)]

18. This complainant also acknowledges that, this complainant and Blaylock, were actively

engaging in this long-term and mutually-consensual sexual relations since this dates of January

2006.

19. This complainant reveals that this complainant and Blaylock would regularly engage in sexual intercourses at these routine standards of approximately 10 to 15 times per month.

20. This complainant cites that upon checking on this safety and soundness of this minor (by this initials of "S.C") that this minor was in fact "home alone "and not currently within this presence of any previously-arranged care providers. (As mutually agreed by this Complainant and Blaylock). This complainant also recognizes to verbally asking this minor "soft-skilled" probing questions towards finding out Blaylock's current statuses.

21. This complainant acknowledges that this "soft-skilled" approach was solely to determine all current "legal" housing standards and adolescent threat assessments (if any) as satisfied "actual" care requirements for this minor. More importantly, this complainant records this previous fact(s) of prior apartment housing "break-ins" as well as reports of stalking and prospective criminal public lewdness actions (which were directed towards, both, this minor and Blaylock) and thoroughly reported by Blaylock to this District of Westborough managerial staff members. This address of this District of Westborough leasing offices is located at 1550 Westborough Drive, Katy, Texas 77449.

22. In response, this minor, outlined to this complainant that Blaylock was currently out with her "new friend" while continuing to verbally express in details, that this minor is more recurrently and more frequently left alone and unsupervised for "estranged" and prolonged periods of times, which and/or included multiple over 24-hour durations.

23. Upon receiving this notifications, this complainant recalled similar custodial- reoccurrence(s) in which Blaylock was not present in this dwellings shared between, this minor and Blaylock. (This complainant also records no prior record of modified custodial- arrangements)

4

24. Most noted, on January 26, 2021, this complainant recalls on viewing for what appeared to be Blaylock departing from this "unfamiliar" white in color "Volvo" sedan of this local convicted felon. Subsequently, upon receiving this dwelling standard from this minor, this complainant contacted (via this telephone) this complainant's mother (Venus Council) and stepfather (Kenneth Council), as well as Blaylock's mother (Tina Archie) and father (Terry Blaylock) to inform all parties of what event(s) were currently transpiring. (To this detriments of this minor's current living standards and positions) (Date of Birth: 06-08-2007)

25. Conversely, upon Blaylock being emotionally informed of all parental standards and notification(s) which were concurrent, this complainant received this telephone call from this Blaylock's Sister (Terry Michelle Blaylock) who began to aggressively engage in this use of profanity as this start of a series of verbally-abrasive assaults towards this complainant . These "sizable" and highly "aggressive" verbiages of "profanity" outpourings were constant in alarming this complainant of notifications of Blaylock's positions of actively and concurrently being engaged in constant "hardcore sex" with this convicted felon.

26. With all details verbally perceived, this complainant departed from this location with this regained custodial care of this minor. (By this initials of "S.C") (Date of Birth: 06-08-2007).

27. Most prominently, amongst this time, this complainant was undoubtedly and alertly concerned of any in-person contacts with this convicted felon (whether voluntary and/or involuntary) (of any) involvements of contacts shall be within direct violations of this Houston Independent School District Police Department Conduct and Authority policy directives. "Associations with Criminal and Others"

28. Hours later, this complainant received a telephone call from this unidentified phone number of 832-443-3542.

29. Upon contact, this initially, unidentified individual, swiftly introduced themselves as Sergeant Gbunblee of this Harris County Sheriff's Department. (Unit 44S36) Within this conversations, Sergeant Gbunblee advised to this complainant that contact was made to this Harris County Sheriff's Department by Blaylock.

30. Sergeant Gbunblee went on to further explain that this in-person interviews with Blaylock was thoroughly and "crowd" exhausted and caused for no-contacts to this Harris County District Attorney's Office for further initializing this,"commonly-routine", criminalization steps, towards this complainant.

31. Sergeant Gbunblee further notified this complainant that because of this title of being a current and sworn State of Texas peace officer license holder (Texas Commission of Law Enforcement number: 438761) within all official governmental municipalities', that contact would have to be made with this supervisory personnel at this complainant's employer. (Houston Independent School District Police Department) This Houston Independent School District Police Department is located at 3500 Tampa Street, Houston, Texas 77021.

32. During this time, this complainant was currently a U.S. and State of Texas Constitutionally sworn 3rd shift patrol officer with this Houston Independent School District Police Department for approximately 4 ½ years.

33. Upon lasting contact being made by this Sergeant Gbunblee (Unit 44S36), immediate contact was made by Sergeant Sophus (Unit 36p) of this Houston Independent School District Police Department.

34. Upon all verbal requests (of whereabouts), this complainant disclosed this and current residential address of 1919 South Kirkwood Road, Apt 162, Houston, Texas 77077.

35. It shall be noted; this Sergeant Sophus Unit 36p of this Houston Independent School District Police Department also made verbal contacts with Blaylock within this time.

36. On March 3, 2021, (as indefinite, eternal finalizing points of contact with Blaylock) this complainant contacted this Harris County Sheriff's Department and summoned for a patrol deputy to "assist" in retrieving all properties and belongings to this minor. (By this initials of "S.C)

37. Upon all responses, Harris County Sheriff's Department, Deputy Paredes, (Unit 44B35) (arrived at this location of 1550 Westborough Drive apartment 7306, Katy, Texas 77449) and (as per uniform worn body camera documentations) on-viewed all civil interaction(s) between this complainant, this minor and Blaylock.

38. During this time, all of this minor's possessions were "successfully" removed from this Blaylock's residence without any physical altercations or physical injuries.

39. Despite all "after-thoughts" of successes, (By Deputy Paredes and this complainant) supervisory personnel contact(s) were once more confirmed from Blaylock with verbalized report(s) of "harassment" which were reported to this complainant's supervisor, Sergeant Sophus Unit 36p.

40. On March 3, 2021, this complainant contracted with this legal representation(s) of this law offices of Michelle Leblanc. Attorney Michelle Leblanc is a family-law practicing, specialist.

41. This law offices of Michelle Leblanc s address is located at 440 Louisiana Street, Suite 900, Houston, Texas 77092.

42. Attorney Michelle Leblanc, "*who*" within all rights, agrees to "civilly-assistant" and "civilly support" this complainant amongst all State of Texas judicial "pursuits" for this benefits of receiving full custodial and "actual" care rights for this minor. (By this initials of "S.C) (Which shall be administered by this See. Texas Family Codes (Chapter 152) for initial jurisdictions services and answers.

43. On March 12, 2021, this complainant filed this incident summaries with this Texas Department of Family and Protective Services; as per advised documentation purposes [and multiple personnel(s)] of this parental disputes from March 2, 2021.

44. In which, during this time, this complainant was highly weighed towards pursuing all full-custodial rights' for this minor. (By this initials of S.C.)

45. On March 22, 2021, Blaylock was served with this petitions to establish parent child relationships as per this 309th Judicial District of Harris County, Texas. (Case number: 2021-14248), [Envelope number: 51394622]

46. On March 31, 2021, this complainant filed this small claims petitions with this Justice of this Peace Courts 5 Place 2. (Case number 215200088620) This address of this Justice of this Peace Courts 5 Place 2 is located at 16715 Clay Road Unit 4, Houston, Texas 77084.

47. This claims for civil causes of action(s) were omened for Slander, Libel and Defamation(s) reasonings from this previous "frivolous" and "untrue" police reporting in which stems from this initial non-factual reporting of case number: 2103-00815. (For which was relieved from Harris County Sheriff's Department)

48. On March 31, 2021, this complainant received a telephone call from 713-274-9182 of this

Detective Matthew Walker Unit 60D12 of this Harris County Sheriff's Department. (Adult

Special Crimes Sections) (Criminal Investigations Bureau)

49. This address of this Detective Matthew Walker Unit 60D12's office is located at

601 N. Lockwood Drive, Houston, Texas 77011.

50. In which, details, within in this conversations were stemming back to this incident dates of

March 2, 2021. Within this conversations, this Detective Matthew Walker Unit

60D12 explained that he was assigned to this case as per "pre cautionary reasonings" against

"domestic violences."

51. In responses, this complainant, advised to this Detective Matthew Walker Unit

60D12 (Adult Special Crimes Sections) (Criminal Investigations Bureau) that Blaylock "Lies a

lot!" In turns, this Detective Matthew Walker Unit 60D12 (Adult Special Crimes

Sections) (Criminal Investigations Bureau) advised to this complainant;

I. "I have been doing this job for almost 25 years, so if she's lying I shall be able to tell."

II. Also, within, this conversations, this Detective Matthew Walker Unit 60D12 verbalized to this

complainant "I should have this case wrapped up in about a day or two."

52. For this record, on April 6, 2021, this complainant (along with this family law representative

attorney, Michelle Le Blanc) engaged in a [(309th Judicial District of Harris

County, Texas (Case number: 2021-14248)] Temporary Restraining

53. Conversely, on April 7, 2021, [after not receiving (any) spoken affirmation(s) of official

procedurals of disposition(s)], this complainant contacted this Detective Matthew

Walker Unit 60D12 over professional emails.[Mathew.Walker@sheriff.hctx.net] within this

series of emails, [which was cc: Mike.Nyugen@sheriff.hctx.net] Harris County Sheriff's

Department. (Adult Special Crimes Sections) (Criminal Investigations Bureau), Stated

      a) "Mr. Carter, I am still working on your case. I will contact you as soon as I have a

             disposition provided by this HCDA Office. Thanks."

      b) On April 8, 2021, it was expressly requested as per response emails from this

             Detective Matthew Walker Unit 60D12,

      c) "Mr. Carter, Please email me any information or evidence you would like to

provide for this case. This can include screenshots or text messages threads between you

and your ex-wife or anything else you feel is relevant. I will contact you once I have had

           an opportunity to go through the evidence. Thanks.

54. On or about April 6, 2021, upon receiving [willful and wanton] frivolous outcries of

exculpatory material(s) from Blaylock, Detective Matthews requested for Blaylock to provide

her cell phone to this Harris County Sheriff's Department for a "scheduled routine" forensic-

analysis; However, Blaylock [under procedural constants] of Detective Matthews would not

comply with "any" requests.

55. It was learned during this time, that Blaylock denied all cell phone device forensic requests

from Detective Matthew Walker Unit 60D12 in lieu of "any" exculpatory materials, discoveries

and/or transparences.

56. During this time, Blaylock quickly would change her personal cell phone devices and/as well

as her personal telephone numbers 'from [414-333-5330 to 832-880-7484] for all willful and

wanton purposes of *tampering with and obstructing* evidences. (From this Harris County

Sheriff's Department)

57. Never the less, it was this same devices which was used by Blaylock to provide frivolous and

false exculpatory evidence(s) against this complainant [to detective Harris] in which was swiftly

utilized and acted upon as prosecuting materials against this former police officer (without delays).

58. On April 12, 2021, this complainant received a telephone call from 713-274-1845 from an individual in which verbally expressed and represented themselves as "Detective Shamanda Harris of the Harris County Sheriff's Department." in which, after this short introductions, quickly and verbally pushed towards summoning this complainant to "come to this police department."

59. This address of this Detective Shamanda Harris of the Harris County Sheriff's Department is located at 601 N. Lockwood Drive, Houston, Texas 77011.

60. Within minutes of any introductions, it was solicited and pressed over [within all confinements of this call] as advice that "the best thing" for this complainant to do would be to simply "come to this police department."

    I. In which, this complainant verbally declined. In response, this Detective Shamanda Harris stated "Well she is saying a lot of things about you." In turn, this complainant declared:

"That's not a problem. Just do your job!"

61. On April 15, 2021, it is confirmed, that this complainant emailed Detective Matthew Walker Unit 60D12, [Mathew.Walker@sheriff.hctx.net] with this tagged cc: of [Mike.Nyugen@sheriff.hctx.net] and provided all of these following:

    I. Copies of 309th Judicial District of Harris County, Texas (Case number: 2021 14248), Petitions to Establish Parent Child Relations-PDF Forms- Generated on: 03/22/21

    II. Copies of Justice of the Peace Precinct 5 Place 2- Small Claims Money Damages Petitions (Case number: 215200088620)-Generated on: 03/31/21

III.    (1) Photographed [Screenshot] [Of Sergeant Gbunblee's (Unit 44S36)] - Call from

March 2, 2021, with this caption as "blasted" as follows: [Generated on: 03/02/21]

IV.   "Spoken with HCSO Sgt. who was at the scene on 3/2/21 and advised that there was no

wrong doing found. This individual advised that Ms. Blaylock had made several

conflicting statements while at the scene which caused no warrants or needs to contact

the DA."

V.   Affidavit of Delivery for Citations and Services- Small Claims Money Damages

Petitions (Case number: 215200088620) - for Copies of Justice of the Peace Precinct 5

Place 2. [Generated on: 04/01/2021]

62. On April 18, 2021, this complainant, received this contact [which is confirmed] from this

Detective Shamanda Harris of the Harris County Sheriff's Department in response:

A. "Good evening B. This is Deputy Investigator Harris which is the lead investigator for

your case. C. I was informed by Deputy Investigator Walker, that you spoke with Sgt. Gbunblee

44S36 while on scene but he is not your investigator on your case. Sgt. Gbunblee was on scene

the day of this incident but now your case is assigned to the Domestic Violence Division. I will

be presenting your case to the HCDA at my earliest conveniences. If you have any more

questions or concerns please feel free to email me. My office number is 713-274-1845. "

63. Within this Month of April 2021, this complainant arrived at this Harris County

Sheriff's Department (Internal Affairs Division) and spoke with this Harris County Sheriff's

Department (Internal Affairs Division), Supervisor Sergeant Riojan. (Sergeant Riojan is best

described as white [ethnicity], of (non-Hispanic), tall and slendered built.

64. More notably, within this time frame, this complainant summoned to [Supervisor

Sergeant Riojan] efforts to successfully file a complaint against "Both Deputy Investigators

Walker and Deputy Investigator Harris, for "[Trying to file a false charge against me.]"

65. It was inquired by this [Supervisor Sergeant Riojan] "Where is this case currently at?!" In all final responses, this [Supervisor Sergeant Riojan] stated:

A. There's nothing that could be done because "They might just end up dropping this

Case....." [Supervisor Sergeant Riojan] also verbally expressed that she had "no ideas of who

Deputy Investigator Walker Unit 60D12 was. "

66. Suddenly, on May 5, 2021, this complainant receives a telephone call from this minor, (By this initials of "S.C.") in which it was verbally broken-down by this minor that this, Detective Shamanda Harris of this Harris County Sheriff's Department, was currently "with me at my school."

67. According to this minor, this minor was involuntarily removed from class by Detective Shamanda Harris of this Harris County Sheriff's Department in efforts of petitioning this minor towards "answering a few question(s)." This address to this location shall remain marked as unlisted for public safety. See. Texas Education Code.

68. Under, this current resolved emotional responses, in receiving this "unforeseen" information, this complainant, verbally-allowed and permitted this Detective Shamanda Harris of this Harris County Sheriff's Department [Full] parental consent and police procedural accesses during this time frame.

69. In which, this police-issued and "non-custodial" interview was recorded for this record by Detective Shamanda Harris of this Harris County Sheriff's Department [Recording devices was currently, on-viewed] as well as a third party school-based administrator [witness] of this middle school by this name of Mrs. Thacker.

70. In which, this Detective Shamanda Harris of this Harris County Sheriff's Department, whom, (while looking at this minor directly in her eyes) had proceeded to strategically interrogate this minor; (By this initials of "S.C.") [Upon witnesses of all parties] this following question(s):

    A. Detective Shamanda Harris: "Have you ever seen your father hit or strike at your mother?"

    B. Minor (By this initials of S.C.): [In which, although dismayed, and disheveled within this terrifying and highly-pressured moment answered]:

    C. "No. I've never seen my father hit my mother. Never."

    D. Detective Shamanda Harris: "What do you know about your mother and this other guy that she is dating? "

    E. Minor (By this initials of S.C.): "I don't know, but my father does not want me to be around him."

71. Upon enduring these "unexpected" and usually high and elevated level(s) of "callously-tactical interrogations", this minor (By this initials of S.C.) later admitted (To this complainant) that she could not actively process any of her remaining work for the remain of this day.

72. On May 7, 2021, this complainant hired and contracted with this legal services from this Law Offices of Justin Keiter.

73. This address of this Law Offices of Justin Keiter is located at 1906 Heights Boulevard, Houston, Texas 77008.

74. This complainant contracted with this legal services of Justin Keiter with these intentions of allocating for this legal representative to present (a "hefty" stack) of court drafted legal custodial document(s) and previous "frivolous" police report(s) (that was previously filed by Blaylock) to

Detective Shamanda Harris of this Harris County Sheriff's Department for this easier

accessibility of sworn investigative truth-seeking [amongst] legalities [thorough] evidence-based

sheriff's department investigative procedural maneuvers and policies.

75. In addition, this legal representative's duties and were to ensure that all avenues of this

investigation were fair and impartial to this client and that this complainant and this minor

(By this initials of S.C.) Constitutional rights were not infringed upon.

76. In fact, all dockets and aligned evidence(s) were presented as "available to be viewed and/or

copying" to this detective Shamanda Harris of this Harris County Sheriff's Department in effort

of making sure that all aspects of this investigations were fair and impartial.

77. Upon making contact with this detective [which was confirmed by emails], this complainant

provided this legal representative with this following:

    A. (1) Copies of 309th Judicial District of Harris County, Texas (Case number: 2021-

    B. 14248), Petitions to Establish Parent Child Relations-PDF Forms- Generated on:

            03/22/21

    C. Copies of Justice of the Peace Precinct 5 Place 2- Small Claims Money Damages

       Petitions (Case number: 215200088620)-Generated on: 03/31/21

    D. (1) Photographed [Screenshot] [Of Sergeant Gbunblee's (Unit 44S36)] - Call from

       March 2, 2021, with this caption as "blasted" as follows: [Generated on: 03/02/21]

    E. "Spoken with HCSO Sgt. who was at the scene on 3/2/21 and advised that there was no

           wrong doing found.

    F. This individual advised that Ms. Blaylock had made several conflicting statements while

        at the scene which caused no warrants or needs to contact the DA."

G. Affidavit of Delivery for Citations and Services- Small Claims Money Damages Petitions

(Case number: 215200088620) - for Copies of Justice of the Peace Precinct 5 Place 2.

Generated on: 04/01/2021]

J. Previously filed Harris County Sheriff's Department incident police report (Case number:

16-84385)

K. Previously filed Madison Police Department occurrence report (Case number: 2009-

224165)

L. [This legal representative of Justin Keiter allocated that "any and all" staging of

transparency, indefinitely, shall be immediately presented upon request.][However, this

request(s) were in-tactfully declined by this Detective Shamanda Harris of this Harris County

Sheriff's Department.]

78. Following this account, in like-minded fashions, on May 10, 2021, Blaylock voluntarily

attended this 309th Judicial District of Harris County, Texas. (Case number: 2021-14248), [and

voluntarily sealed and affirmed this final stage(s) of voluntarily and consensually-signing away

all parental rights to this minor (By this initials of S.C.) and (In which) in-arbitrarily fashions,

"tossed" them to this complainant. As voluntary awarded default(s) [on this dates] amongst [this

minor and this complainant] as per this 309th Judicial District of Harris County, Texas [this

complainant] was awarded full, temporary custodial rights for case number: 2021-14248.

79. On May 12, 2021, this complainant hired this legal representatives of Dustan

Orlando Neyland, who upon contract contacted this Detective Shamanda Harris of this Harris

County Sheriff's Department. [Confirmations by emails]

80. This address of law offices of Dustan Orlando Neyland is located at 701 N. Post

Oak Road Suite 425, Houston, Texas 77024.

81. As, upon all judicial offerings of documental "transparencies", this legal representative published knowledge of these "current" and "in-session" court docket presentations to Detective Shamanda Harris of this Harris County Sheriff's Department.

82. [Detective Shamanda Harris of this Harris County Sheriff's Department declined all offerings for all legal representative conferences and briefings, presented by this attorney Dustan Orlando Neyland.]

83. However, [despite all measures to in sue judicial investigatory-truthfulness, and signed criminal warrants of sworn integrities] subsequently, on or about, May 25, 2021, in this [retaliatory] insidious nature, Houston Independent School District Police Officer Kristopher D. Carter, D.O.B. 07-09-1986 was arrested at this place of employment at this Houston Independent School District Police Department located at 3500 Tampa Street, Houston, Texas 77021.

84. During which, within this time, and of despite of (any) notable worthiness' of within judicially representatively being petitioned not to proceed with [any] attempts to arrest this Sworn Police Officer (Under this color of law) at his current place of employment, [in avoidance of political outcries for malicious public-shaming motives] and/or that this best method for criminalized custodial "detained" arrangements (if any) shall be (by present means) through his current legal representations; Notwithstanding (in similar-like and [outdated] malicious fashions, and without "any" credible and actual policy-based "competent" probable cause justifications; Detective Shamanda Harris appeared at this Houston Independent School District Police Department [armed] while this [with intent to place harms] [in which are solely directed towards this complainant] willfully and wanton omitted sworn documentations of "all" pertinent factual motive for concurrent events]

85. This inaccurate and skillfully-cunning legal brief documentations, consisted of crafty and strategically measured false-frames [(which were "evilly" conspired) by both Blaylock and Detective Shamanda Harris] of "all" accurate and verifiable events [in which were already "bestowed and clamored" amongst this complainant's multiple legal representatives]

86. This was craftily and slickly drawn up in order to acquire and present an in-hand "arrest" warrants against this Police Officer (sworn under this penalty of Perjury. See. Texas Penal Code. (Official Oppression §39.03) (Perjury§37.01)

87. Within this arrest proceedings, Police Officer Kristopher Carter suffered not only his immediately deprivation of rights of all natural freedoms [which are guaranteed by and to all natural individuals], but Police Officer Kristopher Carter also suffered and witnessed these on-scene U.S. Constitutional violations of having both his police license, his cell phone devices, and his concealed hand gun (firearm) all confiscated during this illegal arrest.

88. While, being illegally detained for a criminal offense (with no probable cause and/or just cause) Police Officer Kristopher Carter repeatedly reminded detective Harris, that upon all sole-custodial rights and duties that were granted by the 309th Judicial District Court of Harris County, that his minor by the initials of "S.C." was in need of custodial care-taking following her exit of school which was in only a few hours later; Police Officer Kristopher Carter's attempt to make verbal telephone access to this minor which was continuously denied by detective Harris repeatedly.

89. During this time of arrest, Police Officer Kristopher D. Carter (TCOLE Number: 438761) was a sworn State of Texas Peace Officer with this Houston Independent School District Police Department for over 4 ½ years.

90. This address of this Houston Independent School District Police Department is located at

3500 Tampa Street, Houston, Texas 77021.

91. While employed at this Houston Independent School District Police Department,

Police Officer Kristopher D. Carter had received several public-service fitness awards; which

included Police Officer of the Year in 2018.

92. More so, Police Officer Kristopher D. Carter worked at this Westside High School campus

located at this address of 14201 Briar Forest Drive, Houston, Texas 77077.

93. While employed as a Police Officer at this Westside High School, Police Officer

Kristopher D. Carter had developed countless amounts of relationships, mentorships and

partnerships, with over 30,000 students, parents and current staff members, while performing all

job duties and employment as a Police Officer.

94. Police Officer Kristopher D. Carter, was also a courtesy officer at this Abbey at

Briar Forest Apartments located at this address of 1919 South Kirkwood Road, Houston,

Texas 77077.

95. In which, at this location Police Officer Kristopher D. Carter continuously supported and

aided over 2,000 residents on a daily basis.

96. In 2020, Police Officer Kristopher D. Carter received a promotion and was reassigned to the

3rd shift patrol at this Houston Independent School District Police Department. During this time,

Police Officer Kristopher D. Carter's salary was estimated to be approximately $110,000 a year.

97. Most importantly, it was later discovered that after booking Former Police Officer

Kristopher Carter into the Harris County Jail located at 701 North San Jacinto Street,

Houston, Texas 77002 for a warrant in which all accusations of sexual assaults were

"investigative neglected and false", that detective Harris had intentionally and knowingly

(Upon all actions that occurred which substantially injured Police Officer Kristopher

Carter) purposely omitted key details and facts to this Harris County District Attorney's

Office in efforts to secure an arrest warrant against Police Officer Kristophor Carter, while acting

in an avenging and tactful nature. (Official Oppression §39.03) (Perjury§37.01)

98. In short, (while being placed under illegal malicious detentions [at this Harris

County Jail]) this Former Police Officer Kristopher Carter was informed that detective

Harris had later [in contempts against 309th Judicial District Court of Harris County] attempted

to inappropriately and "upon all" unadvisedly force this minor by the initials of "S.C. to this

respondent Blaylock [See. Texas Penal Codes. §22.041for Child Endangerments], who weeks

prior had [with legal counsels] signed away all parental and custodial rights in the 309th Judicial

District Court of Harris County on May 10, 2021 of this minor by the initials of "S.C.

99. Furthermore, in this moment, of being afraid for her life, this minor had physically ran away

from Blaylock, in which this Cypress-Fairbank Police Department were communicated to (on

this same night, after this handles of this illegal arrest by detective Harris) and notified to

administer all apprehensions of S.C. while dictating all proper youth interventions. ([Cypress-

Fairbank Police Department] acted proper and in compliances of all of the 309th Judicial District

Court of Harris County legalities and custodial prudences) (Child Endangerment

§22.041)(Cypress-Fairbank Police Department case number: 21-01231).

100. Upon this immediate release of Former Police Officer Kristopher Carter, [while still trying

to adjust to all avenues of these recently falsely accused turmoils] which were based on false

allegations and no moral evidences or clauses, Blaylock contacted this Texas Department for

Child Services and set all stages for yet another series of false reporting (which in turn generated

no-maliciously attempted results).

101. Following this 7 months, of this false imprisonment, [of Former Police Officer Kristopher Carter], detective Harris, on or about this month of November 2021, falsified and set these standards willfully and wantonly by altering and obstructing truth revealing (digital) documents as well as omitting specific implementations of "chronologically-layered" exculpatory evidences from this discovery for cause number: 1724346/47 and case number: 210300815; This goes entirely, despite having all necessary documental evidences presented after and following these "possessive and/or confiscative searches and seizures" from Former Police Officer Kristopher Carter's (individual) during this time of his arrest and illegal search and seizures. (Tampering with Evidence §37.09)(Obstructing Title 8 Chapter §38.08)

102. These daunting final criminal act(s) further illustrates these "unsupervised" impressions and malign motives towards these "un-statutory and Unconstitutional malicious act(s)" while displaying "willful" intents of substantial harms "and all" injuries towards Former Police Officer Kristopher Carter.

103. Moreover (upon professional inadequate parallels) Defendant Jamie Michele Burro participated as an actor within this malign pursuit of falsely arresting and conspiring to publicly indict this Former Police Officer Kristopher Carter (for no such cause) within (amongst all possible criminal conspiracies) in congruence of this Harris County Sheriff's Department, police investigator Harris; which caused massive and continuous injuries to this Former Officer. (Within this Harris Counties) as well as this minor (by this initials of S.C.).

104. More so, on or about May 28, 2021, during this preliminary hearing, (at this 230th District Court criminal court located at this 1201 Franklin Street, Houston, Texas 77002) Defendant Jamie Michele Burro whom (after never basing any case points on factual [Possible, on-viewed] and verified evidences had discovered (as per this former police officer's legal

21

representative) that all motives behind all allegations filed, criminally charged, established and confirmed, were retaliatory in nature and stemmed from this current and present on-going child custody battles.[This child custody dispute of this (309th Judicial District Court of Harris County) was a well-known amongst many]

105. During, all processes of this arrest, this parental-relationship custodial establishment was currently within this TRO (Temporary Restraining Orders) ligation proceeding at the 309th Judicial District Court of Harris County. Moreover, (this legal representative of this Former Police Officer) read from these transcripts of all detailing and newly unveiling aspects of this 309th Judicial District Court of Harris County Temporary Restraining Order hearing (TRO), then and newly-introduced under this jurisdictional criminal filings matter(s) of and/to this 230th Criminal District Court of Harris County.

106. All revelations pointing that this Former Police Officer was in fact this *"full"* custodial guardian of this minor by the initials of "S.C.

107. Additionally so, despite neglecting to conduct any further and/or thorough investigation(s) after this entire one-year timeline duration(s) following these illegal detainment(s) and false arrest(s) of this Former Police Officer, Defendant Jamie Michele Burro [additionally] willfully and wanton acted in such manners of committing minimal state statutory violations of prosecutorial misconducts by engaging in this Solicitation of Perjury against this former Police Officer.[In efforts of willfully and wantonly criminally prosecuting this innocent "black-male" complainant]

108. In accordance, (toward nobody's surprise) on April 5, 2022, Defendant Jamie Michele Burro summoned and improperly solicited for this spoken testimonies of Blaylock at this Harris

County Grand Jury Indictment Hearing. (See. Texas Penal Codes. Aggravated Perjury §37.03)

(§37.09 Tampering with or Fabricating Physical Evidence)

109. In which, Blaylock arrived on this settings and [while sworn under oaths] [and (for this

records) [under all penalties of Perjury] [willfully and wantonly] committed this Texas Penal

Codes. criminal statutory violations of Aggravated Perjury §37.03.

110. For all which all intents and purposes, resulting in this felony indictment(s) of this Former

Police Officer.

111. These act(s) also aided and abided in this deprivation of this Former Police

Officer's rights.

112. These act(s) also make [intentional] mockeries of our court's [internal and undisclosed]

justice systems processes. Previously, Defendant Jamie Michele Burro had "willfully" failed to

examine key portions of exculpatory material(s) within relationships of this case (cause number:

1724346/47 and case number: 210300815) which and/or neglected to professionally demonstrate

"foreseeable insights" towards weighing "all fair scales of justices" and should have

professionally acknowledged that Blaylock was going to commit sworn judicial deceptions and

commit all [retaliatory [willful and wanton] acts of Aggravated Perjury. (§37.03).

113. Defendant Jamie Michele Burro was immediately reassigned to another division within this

Harris County District Attorney's Office as a professional maneuver to escape all professional

retaliatory liabilities, after finalizing acute and severe, intentional and willful harms upon this

Former Police Officer's professional career, community reputations, and [innocent] qualities of

life.

114. On or about, December 5, 2022, this cause number: 1724346/47 and case number:

210300815 for these [willfully and wanton] as acts of malice, criminally and racially - charged offenses: Sexual Assault §21.01 and Invasive Visual Recording §21.15 were dismissed without any trial fashions or proceeding(s) or *improper* conditional plea dealings towards this Former Police Officer. [Nineteen months later following all Unconstitutional United States 4th amendment pretrial-detainments]

115. As a direct and proximate result of the misconduct of the Defendants individually and collectively described herein, Plaintiff suffered economic and non-economic damages in an amount to be fully determined in a trial by jury.

116. The Plaintiff is seeking compensatory and punitive damages against each of the Defendants named in the instant matter individually and collectively in an amount to be determined in a trial by jury as well as any and all other Relief deemed necessary and applicable.

## COUNT I

## CIVIL ACTION FOR DEPRIVATION OF RIGHTS

117. This Plaintiff hereby references and incorporates Paragraphs 1 through 116 as though set forth herein at length.

118. Section 1983 provides, in pertinent part: Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. 42 U.S.C. § 1983.

119. To assert a claim under section 1983, Plaintiff must show (1) he had a right secured by the Constitution and laws of the United States that was violated (2) by a person who acted under color of state law. Hall v. Witteman, 584 F.3d 859, 864 (10th Cir. 2009)

120. The complaint must allege an affirmative link between the alleged constitutional violation and the specific individual's participation in that violation. Stidham v. Peace Officer Standards and Training, 265 F.3d 1144, 1156-57 (10th Cir. 2001).

121. The doctrine of qualified immunity "shields government officials performing discretionary functions from individual liability under 42 U.S.C. § 1983 unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." DeSpain v. Uphoff, 264 F.3d 965, 971 (10th Cir. 2001) (quoting Baptiste v. J.C. Penney Co., 147 F.3d 1252, 1255 (10th Cir. 1998) (internal quotation marks omitted)).

122. Once a defendant asserts the defense, the plaintiff must demonstrate that qualified immunity is not proper by showing that "(1) the defendant's conduct violated a constitutional right and (2) the law governing the conduct was clearly established at the time of the alleged violation." DeSpain, 264 F.3d at 971 (quoting Baptiste, 147 F.3d at 1255). The Constitutional rights alleged to have been violated in the instant matter are:

- The 2nd Amendment to the United States Constitution provides: A well-regulated Militia, being necessary to the security of a Free State, the right of the people to keep and bear Arms, shall not be infringed.

- The 4th Amendment to the United States Constitution provides: The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized

- The 5th Amendment to the United States Constitution provides: No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or

indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

- The 6th Amendment to the United States Constitution provides: In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense.

- The 14th Amendment to the United States Constitution provides: No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

123. Implicit in the Fourth Amendment's protection from unreasonable searches and seizures is its recognition of individual freedom. That safeguard has been declared to be "as of the very essence of constitutional liberty" the guaranty of which "is as important and as imperative as are the guaranties of the other fundamental rights of the individual citizen . . . ." *Gouled* v. *United States*, 255 U.S. 298, 304 (1921); cf. *Powell* v. *Alabama*, 287 U.S. 45, 65-68 (1932). While the

language of the Amendment is "general," it "forbids every search that is unreasonable; it protects all, those suspected or known to be offenders as well as the innocent, and unquestionably extends to the premises where the search was made . . . ." *Go-Bart Importing Co.* v. *United States*, 282 U.S. 344, 357 (1931). Mr. Justice Butler there stated for the Court that "[t]he Amendment is to be liberally construed and all owe the duty of vigilance for its effective enforcement lest there shall be impairment of the rights for the protection of which it was adopted." *Ibid.* He also recognized that "[t]here is no formula for the determination of reasonableness. Each case is to be decided on its own facts and circumstances." *Ibid.;* see *United States* v. *Rabinowitz*, 339 U.S. 56, 63 (1950); *Rios* v. *United States*, 364 U.S. 253, 255 (1960).

124. These Defendants knew or should have known of this material circumstances as this Plaintiff informed them of this several times throughout the course of this incidents including but not limited to at the time of the incident as shown through this undisputed evidences pertaining to this instant matters.

124. As a result, the Plaintiff alleges that there is enough evidence to proceed forward with the 42 U.S.C. § 1983 claim and that this Defendants are absolved of any and all qualified immunity protections on the basis of the grossly negligent circumstances described herein; within all facts disputed to be determined in a trial by jury.

125. As a direct and proximate cause of the misconduct described herein, the Plaintiff suffered damages in an amount to be determined in a trial by jury in economic and non-economic damages as well as mental suffering.

126. The Plaintiff is seeking compensatory damages and punitive damages for each of the causes of action described herein as well as any and all other relief deemed necessary and applicable.

## COUNT II

## DEFAMATION

127. This Plaintiff hereby references and incorporates Paragraphs 1 through 116 as though set forth herein at length.

128. To establish a defamation cause of action in the State of Texas, a plaintiff must prove that the defendant (1) published a statement; (2) that was defamatory concerning the plaintiff; (3) while acting with either actual malice, if the plaintiff was a public official or public figure, or with negligence, if the plaintiff was a private individual, regarding the truth of the statement. *WFAA–TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998).

129. Here, the Defendants have consistently proceeded to spread false and fraudulent information about this Plaintiff throughout this facts described in this instant matters with reckless disregard for the rights and interests of this Plaintiff thereby giving rise to this instant complaint.

130. As a direct and proximate cause of the misconduct described herein, this Plaintiff suffered damages in an amount to be determined in a trial by jury in economic and non-economic damages as well as mental suffering.

131. This Plaintiff is seeking compensatory damages and punitive damages for each of the causes of action described herein as well as any and all other relief deemed necessary and applicable.

## COUNT III

## MALICIOUS PROSECUTION

132. This Plaintiff hereby references and incorporates Paragraphs 1 through 116 as though set forth herein at length.

133. To sustain a malicious prosecution claim, Texas law requires that a plaintiff show "(1) a criminal action was commenced against him; (2) the prosecution was caused by the defendant or with his aid; (3) the action terminated in the plaintiff's favor; (4) the plaintiff was innocent; (5) the defendant acted without probable cause; (6) the defendant acted with malice; and (7) the criminal proceeding damaged the plaintiff." Id. at 328 (quoting Taylor v. Gregg, 36 F.3d 453, 455 (5th Cir. 1994)).

134. In this instant matter, a criminal action was initiated against this Plaintiff without justification or cause and was created by these Defendant's in this instant matter in tandem with one another.

135. These actions was ultimately terminated in the Plaintiff's favor an therefore resulted in damages to this Plaintiff both economically and non-economically through his detention and this substantial amount of efforts put forth afterwards to clear his name.

136. As a direct and proximate cause of this misconduct described herein, this Plaintiff suffered damages in an amount to be determined in a trial by jury in economic and non-economic damages as well as mental suffering.

137. This Plaintiff is seeking compensatory damages and punitive damages for each of the causes of action described herein as well as any and all other relief deemed necessary and applicable.

## COUNT IV

## ABUSE OF PROCESS

139. This Plaintiff hereby references and incorporates Paragraphs 1 through 116 as though set forth herein at length.

140. The elements of abuse of process are: (1) the defendant made an illegal, improper, or perverted use of the process, a use neither warranted nor authorized by the process; (2) the defendant had an ulterior motive or purpose in exercising such illegal, perverted, or improper use of the process; and (3) damage to the plaintiff as a result of such illegal act. Bossin v. Towber, 894 S.W.2d 25, 33 (Tex. App.—Houston [14th Dist.] 1994, writ denied)

141. Defendant Kohisha Blaylock completed this deprivation of rights by [willfully and wantonly] committing *continuous* false criminal accusations [during all judicial proceedings] against this Former Police Officer in which this defendant (maliciously and upon acts of retaliatory intents)[See. 309th Judicial District of Harris County, Texas (Case number: 2021-14248] manipulated (upon multiple statutory penalties of perjuries and false reportings) upon all parties have displayed and acted upon [discriminatory intents] towards violating this plaintiff's Second, Fourth, Fifth, Sixth, and Fourteenth Amendments of this United States Constitution.

142. Defendant Kohisha Blaylock also completed [this following] abuses of rights as violations of See. Texas Penal Code Sections: 37.02, 37.03(b), 37.04 (c), 37.05(1)(2), 37.06, 37.08, 37.09(1)(2)(d)(1), 42.01(a)(2), 42.06(a), 42.061, 42.07(a)(3). [In which all defendants' were aware and possessed prior knowledge of]

143. For this record, it is publicly-documented and [well-known by all defendants] that Blaylock has previously filed over *six* prior frivolous police reports: [without any criminal causes of acts and/or actions]

      I.        Madison Police Department [Case No: 2009-224165]

      II.       Harris County Sheriff's Department [Case No: 16-84385]

      III.     Harris County Sheriff's Department [Case No: 2103-00815]

      IV.     Harris County Constable's Department [Case No: 2103-00940]

V.      Houston Independent School District Police Department [State of Texas Sworn
        Affidavit]

VI.      Texas Department of Child Services [Case No: 48682216]

144. Defendant Shamanda Harris completed this [willfully and wanton] acts of deprivations of

rights towards this complainant.

145.  More so, the fruits of this arrest warrant which was obtained by [detective Harris]

demonstrates only this fruits of illegal activities which were [willfully and wantonly] fabricated

against this former police officer.

146.  Defendant Shamanda Harris knew and was aware that no probably causes exists for any

legal warrant proceedings and that all intentions were stepped towards inflicting and injuring this

Former Police Officer. (See. Franks vs. Delaware)


147. Defendant Shamanda Harris actions were similar in this details and facts (See.

BreonnaTaylor) in which this defendant successfully committed and should be charged with

(And/or not including these Constitutional Civil Rights violations) with conducting unlawful

criminal conspiracies, and obstruction offenses. (See. The Justice Act)

148. Defendant Harris's [willful and wanton] acts also confirmed this United States

Constitutional violations of this plaintiff's Second, Fourth, Fifth, Fourteenth amendments. (And

which shall not qualify for any immunities doctrines)

149. Furthermore, following this Former Police Officer's dismissal of any criminal wrongdoings,

defendant Harris, is still in possession of this illegally confiscated properties of this

complainant's. (See. Cause number: 1724346/47 and case number:

210300815 [of this 230th Criminal District Court of Harris County] which is a current and

withstanding United States Constitutional violation of this plaintiff's 4th amendments

150. Defendant Harris should not only be held liable for this compensatory and injunctive damages reliefs but also for punitive damages and upon [willful and wanton] acts of abuse of process and malicious foot holdings and standards.

151. Nevertheless, this former police officer's [DNA] is still under this confinements of this State; which is concurrently illegally obtained by a series of false arrests and uniquely stored towards futuristic prosecutions towards this plaintiff. See. United States v. Reese, 92U.S. 214 (1875)

152. All exculpatory evidences used against this former police officer were never grounded by "obstructed facts" and were in fact invalid upon all thorough and just [without discriminations] investigative inspections. See [Carroll v. United States (1925)]:

    I.   "Good Faith is not enough to constitute probable cause. That faith must be grounded on facts within the knowledge of the law enforcement agent, which in the judgment of the court would make this faith reasonable."

153. Defendant Jamie Burro, [during this investigative staging's] did not have any probable causes and *mere suspicion would have not* been enough to issue a criminal summons of arrests against this former police officer.

154. Despite never having probable causes, defendant Jamie Burro continued to prosecute this innocent citizen and former police officer [now under this role of Harris County prosecutor] for an additional nineteen months. [In which (multiple) prosecutorial misconducts have occurred]. See. Brinegar v. United States (1949) Whereas, probable causes are designed to hold actors [these defendants] within various judicial jurisdictions and proceedings accountable.

155. More so, defendant Jamie Burro (along with all defendants) should have known that if law [and its fruits] is so vague and standard less, that it leaves this uncertainty of conducts in which it

prohibits, then it fails to meet this requirements of the Due Process Clauses. See. Giaccio v. Pennsylvania, 382 U.S. 399, 86 S. Ct. 518 (1966). These *frivolous* exculpatory materials which were presented by defendant Blaylock were extremely vague and standard less, therefore should not have been measured upon justified due process proceedings. However (as results) this plaintiff's civil rights were violated upon [willful and wanton] later unveiled-aggravated perjuries. (acted upon as of these defendants')

156. Investigator, defendant Burro shall have possessed all knowledges that this exculpatory materials would have without doubt led to a motion of Habeas Corpus.

157. In addition, civil rights violations within this complaints by these defendants' include procedural impediments at this federal levels which shall continue to be inadequate if "standard and ethical" permanent discriminatory injunctions and declaratory relief measures which are not granted.

158. Furthermore, no municipal internal investigations of misconducts were conducted by its "internal investigative" employees' upon 'alertness' of constitutional violations' in a procedural fashions. [which could have prevented mental anguish and irreparable defamatory injuries absorbed towards this Former Police Officer] upon reporting.

<u>**COUNT V**</u>

<u>**MUNICIPALITY LIABILITY (MONELL CLAIM)**</u>

159. The Plaintiff hereby references and incorporates Paragraphs 1 through 116 as though set forth herein at length.

160. Section 1983 provides a cause of action against any person who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within

the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983.

161. A municipality is liable under § 1983 "when execution of [its] policy or custom, whether made by its lawmakers or by those whose edicts may fairly be said to represent official policy, inflicts the injury." Monell, 436 U.S. 658, at 694. Municipal liability can rest on: (1) an express policy that caused the constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled that it constitutes a policy; or (3) that the constitutional injury was caused by a person with final policymaking authority. Lewis v. City of Chi., 496 F.3d 645, 656 (7th Cir. 2007).

162. To survive a motion to dismiss a Monell claim, a plaintiff must "plead facts that show 'that there is a true municipal policy at issue, not a random event. If the same problem has arisen many times and the municipality has acquiesced in the outcome, it is possible (though not necessary) to infer that there is a policy at work.'" Liska v. Dart, No. 13 C 1991, 2014 WL 3704635 at *10 (N.D. Ill. July 23, 2014)

163. A plaintiff also must be able to show that the municipality's policy was the "moving force" behind the alleged injury; that is, a plaintiff "must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 404 (1997);

164. In this instant matter, no municipal internal investigations of misconducts were conducted by its "internal investigative" employees' upon 'alertness' of constitutional violations' in a procedural fashions. [which could have prevented mental anguish and irreparable defamatory injuries absorbed towards this Former Police Officer] upon reporting.

165. This municipality engages in policies and practices of deliberate indifferences to this care and custody's of its citizens that results in this unlawful detention(s), false arrest(s), abuse of processes within [allotted] authorities and malicious prosecutions of law-abiding police officers.

166. In addition, within these alternatives, this defendant provided inadequate trainings to civilian and sworn officer personnels, including but not limited to this defendant Harris and failed to supervise [within this agency] while criminal procedurals and detentions occurred.

167. This defendant, as a municipality, under constant practices, adheres to placing its citizens into dangerous and constitutional-rights' violating situations without any preventive measures.

168. For this record, this municipality has a record of over thirty inmate deaths within this Harris County Jails which are located within this geographical confinements within this County of Harris.

    A. A municipality may be held liable for its failure to train a single police officer when the officer's acts were so egregious that the city should have had a clear warning that the particular officer posed a danger to citizens. See Pineda v. City of Houston, 124 F. Supp. 2d 1057, 1068 (S.D. Tex. 2000

169. Against all rights, this municipality detained this innocent and law-abiding Police Officer in this same establishments (with) as over 800 murder suspects at which this jailed institution was not in compliance with this State of Texas.

170. Most importantly, this municipality has shown this continuous and systematic neglects as this Former Police Officer is suffering upon sustained injuries in results.

171. Failures of trainings to provide and steadily maintain federal leveled guidelines of private and individuals' protected rights [by this municipality] will continue to excel as in substantial and factual federal pleadings.

172. All violations of these acts are concurrently in precessions; still today and as a result has severely caused irreparable injuries to this plaintiff, as major openings by this hands of these defendants' whom are currently exercising beyond statutorily conferred powers and/or departmental injustice and abuses.

173. All exculpatory materials [which shall be presented] shall highlight all gaps within these defendants' trainings, adequate knowledge of these laws, and utter disregards for this plaintiff's civil rights and God-Ordained liberates.

174. Equally important, alongside unnecessarily defamation(s) which were acted upon [willfully and wantonly] towards this "black-male" complainant with all disregards for all truths, it shall be proven that [willful and wanton] acts were in affects as a means of reassurances that no probable causes was never merely established by "all" defendants.

175. Equally, these defendants worked tremendously and painstaking hard in efforts of escaping previously judicially-documented and non-investigatory (retaliatory) filed defamatory footsteps of perjuries (upon actors of "all" Courts); Instead, of receiving all elements of truthful briefings presented by multiple legal representative of this former police officer. [Whom were collectively appraised and licensed]

176. As majority of these intents of merits were based upon "racial and minority-based demographic biases" and not factual beliefs.

177. These official policies or customs excised throughout these acts have affirmed Untied States Constitutional violations.

178. These attempts were by all means in collaborations to destroy a successful and career driven "polished" minority.

179. Additionally, both defendants Jamie Michele Burro and Shamanda Harris [currently amongst their individual capacities]  whom were sworn and certified under this color of law should have exercised all legislative powers and authorities of within [upon non-bias of retaliatory malice] and should have not acted upon any guises of any lying tongues. (Towards this former police officer)

180. However, upon today's knowledges, all acts of these defendants of whom have shown as neglected acts of (willful and wanton) institutional valor(s) of law enforcement governments, "all" are ensuring that *all* images must end up in this public eye as defamatory (at best) towards such foreign and/or specific individuals. [Namely within this lawsuit]

181. Furthermore, it shall be proof-driven by a series of exhibits [not upon without "any" reserves] that this plaintiff's second, fourth, fifth, sixth, and fourteenth amendments to this United States Constitution were deprived as produces (without respects) upon this Texas Penal Code Articles 20.02, 22.041(c) (e), 37.03, 37.08, 37.09 and 39.03 in which all exculpatory evidences for discoveries shall be presented to this court.

## JURY TRIAL DEMANDED

182. This Plaintiff hereby demands a trial by jury with regards to any and all genuine disputes of material facts.

## PRAYER FOR RELIEF

183. For this records and above [upon majority] but (not all) monetary compensations damages towards this Former Police Officer Kristopher Carter, shall include injunctive reliefs, "all" monetary damages for intentional discriminations, "every" attorney's retainer fees, and costs of suit as provided for by 42U.S.C. §1988 (b). Plaintiff requests that this court and juries awards "all" attorney fees and expenses. [Case 4:23-cv-01042]

184. Availabilities of individual's monetary damages through agency actions, [including]
medical bills, "all" lost wages, reduced earning capacities, pain and suffering (mental anguish
amongst large amounts of discriminatory distress), compensation as trial by jury [demands] as
per "every" constitutional injuries.

185. Punitive damages are also prayer upon. More so, Former Police Officer
Kristopher D. Carter suffered irreparable injuries as a results of this defendants' intentional and
willful actions.

186. Upon this defendants' unlawful conducts, [this Former Police Officer] has suffered, (past)
and is suffering (present), this regularities of physical, mental, and psychological damages in
these forms of extreme and enduring worrying, grief, headaches, humiliation upon defamatory
markings, public embarrassments of shames, mental anguishes, and emotional traumas within
this jurisdictional limits of this Court, in which are to be presented at trials.

WHEREFORE, based on the foregoing, the Plaintiff seeks that this Honorable Court enters a
judgment against the Defendants as follows:

   A) COMPENSATORY DAMAGES in an amount not less than $90,000 to be determined

   in a trial by jury

   B) PUNITIVE DAMAGES in an amount to be determined in a trial by jury

   C) COSTS AND FEES associated with litigating the instant matter

   D) ANY AND ALL OTHER RELIEF DEEMED NECESSARY AND APPLICABLE

DATED: April 26, 2023                           Respectfully Submitted,


                                        Former State of Texas Sworn Peace Officer
                                        TCOLE Numbers 438761

Kristopher D. Carter
925 S. Mason Road Unit 296
Katy, Texas 77450

7021 2720 0002 8366 7610




RDC 99



77002

U.S. POSTAGE
PAID
DENVER, TN
10007
MAY 01 23
AMOUNT
$7.3
R2308X141032

United States Courts
Southern District of Texas
FILED

MAY 01 2023

Nathan Ochsner, Clerk of Court

Southern District of Texas
Bob Casey United States Courthouse
515 Rusk Avenue
Houston, Texas 77002